IN RE INTEREST OF BILLIE B., A CHILD UNDER 18 YEARS OF AGE. STATE OF NEBRASKA, APPELLEE, V. MARY B., APPELLANT.

601 N.W.2d 799

Filed October 26, 1999.    No. A-99-188.

Steve Williams, of Recknor & Associates, for appellant.

Gary E. Lacey, Lancaster County Attorney, and Rodney D. Reuter for appellee.

IRWIN, Chief Judge, and SIEVERS and CARLSON, Judges.

SIEVERS, Judge.

This opinion addresses the failure of a juvenile court to perform the statutorily mandated advisement of a parent's rights during an adjudication of his or her child.

## BACKGROUND

On October 28, 1998, the State filed a petition in the separate juvenile court of Lancaster County alleging that Mary B. inappropriately disciplined her young daughter, Billie B., by shaking Billie and yelling at her. The shaking allegedly happened on October 26, 1998. The petition was brought under Neb. Rev. Stat. § 43-247(3)(a) (Reissue 1998) and, pursuant to that statute, alleged that Billie was without proper parental care through the fault or habits of Mary. Billie was born on February 2, 1997, and was thus 20 months old at the time of the incident.

On October 28, 1998, the day the petition was filed, the juvenile court ordered that the Nebraska Department of Health and Human Services (DHHS) take temporary custody of Billie. A hearing was held the next day on temporary custody. Both sides presented evidence, and the court ran out of time for the hearing before Mary's evidence was completed. Thus, the court continued the hearing until a later date, November 3. Before the hearing ended on October 28, the court and Mary's counsel engaged in the following exchange:

> THE COURT: . . . The Court will further direct that this matter, given the nature of the offense that is alleged, that this matter can be fast tract [sic] for trial.
>
> [Mary's attorney]: Thank you, Your Honor.
>
> THE COURT: If you're willing to do so.
>
> [Mary's attorney]: Yes, we are.
>
> THE COURT: All right. You'll need to — You may want to consider doing a waiver of summons and then we can talk about doing the adjudication as soon as poss- — the adjudication hearing as soon as possible and proceeding to trial on this matter. That'll be the order of the Court and we are adjourned.

Mary filed a written waiver of summons on October 30. On that same day, she filed a short pleading entitled "Respondent's Denial of Petition." It states:

COMES NOW the Respondent, Mary B[.], and for her response to the Petitioner's Petition states as follows:

1. Denies all allegations contained in the Petition of the State of Nebraska.

WHEREFORE, the Respondent prays that this matter be dismissed, or in the alternative, be set for the soonest available adjudication.

The temporary custody hearing continued on November 3, 1998. Mary testified, and the parties argued their respective positions on temporary custody. The court continued temporary custody in DHHS and set the case for trial on December 23. The parties tried the case on December 23. The court ultimately found that the allegation of inappropriate discipline was true by a preponderance of the evidence. Accordingly, the court took jurisdiction over Billie and also continued temporary custody with DHHS.

During the trial, the State called three witnesses: the eyewitness who claimed to have seen Mary shake Billie, and so reported the incident to the police; the police officer who investigated the incident; and Billie's pediatrician, who performed an evaluation of Billie and reviewed the results of tests performed on Billie at the hospital. Mary's attorney cross-examined all three witnesses for the State in considerable depth and detail.

When it was Mary's turn to present evidence, she testified on her own behalf. She denied shaking and yelling at Billie. Also testifying for Mary was Cathy Crisp, who saw Mary and Billie shortly before the incident. Crisp testified to facts that supported Mary's theory that she handled Billie appropriately that day and that Billie was not throwing tantrums. As stated earlier, the juvenile court found the allegation of inappropriate discipline to be true. Mary timely appealed.

## ASSIGNMENT OF ERROR

Mary asserts that the separate juvenile court violated her right to due process of law when it took jurisdiction over her child without first advising her of the nature of the proceedings, the

possible dispositions, and her rights pursuant to Neb. Rev. Stat. § 43-279.01 (Reissue 1998).

## STANDARD OF REVIEW

■ The appellate courts review juvenile cases de novo on the record and reach independent conclusions. *In re Interest of Tabatha R.*, 255 Neb. 818, 587 N.W.2d 109 (1998).

## ANALYSIS

The crux of this appeal is that the juvenile court never advised Mary of her rights, of the possible dispositions which could occur, or of the nature of the juvenile court proceedings. Such advisement is required by § 43-279.01. Mary argues that this deprived her of her constitutional right to due process, affecting her liberty interest in raising Billie. The State concedes the lack of advisement by the court, but argues that it must be considered in connection with how the case proceeded in the juvenile court.

Section 43-279.01 provides the following requirements for action of a juvenile court after a petition is filed against a parent:

(1) When the petition alleges the juvenile to be within the provisions of subdivision (3)(a) of section 43-247 or when termination of parental rights is sought pursuant to subdivision (6) or (7) of section 43-247 and *the parent or custodian appears with or without counsel, the court shall inform the parties* of the:

(a) Nature of the proceedings and the possible consequences or dispositions pursuant to sections 43-284, 43-285, and 43-288 to 43-295;

(b) Right to engage counsel of their choice at their own expense or to have counsel appointed if unable to afford to hire a lawyer;

(c) Right to remain silent as to any matter of inquiry if the testimony sought to be elicited might tend to prove the parent or custodian guilty of any crime;

(d) Right to confront and cross-examine witnesses;

(e) Right to testify and to compel other witnesses to attend and testify;

(f) Right to a speedy adjudication hearing; and

(g) Right to appeal and have a transcript or record of the proceedings for such purpose.

(2) After giving the parties the information prescribed in subsection (1) of this section, the court may accept an in-court admission, an answer of no contest, or a denial from any parent or custodian as to all or any part of the allegations in the petition. The court shall ascertain a factual basis for an admission or an answer of no contest.

(Emphasis supplied.)

Regarding due process in situations like this, the Nebraska Supreme Court has stated that "[t]he law is clear that parents have a recognized liberty interest in raising their children." *In re Interest of Tabatha R.*, 255 Neb. at 828, 587 N.W.2d at 117. The 14th Amendment to the U.S. Constitution provides that no state shall deprive a person of liberty without due process of law. Further, we have stated that the parent-child relationship is afforded due process protection. *In re Interest of A.D.S. and A.D.S.*, 2 Neb. App. 469, 511 N.W.2d 208 (1994).

The Nebraska Supreme Court, in *In re Interest of Constance G.*, 254 Neb. 96, 102, 575 N.W.2d 133, 138 (1998), quoting *Lassiter v. Department of Social Services*, 452 U.S. 18, 101 S. Ct. 2153, 68 L. Ed. 2d 640 (1981), discussed due process in juvenile cases:

"For all its consequence, 'due process' has never been, and perhaps can never be, precisely defined. '[U]nlike some legal rules,' this Court has said, due process 'is not a technical conception with a fixed content unrelated to time, place and circumstances.' *Cafeteria Workers v. McElroy*, 367 U.S. 886, 895[, 81 S. Ct. 1743, 6 L. Ed. 2d 1230 (1961)]. Rather, the phrase expresses the requirement of 'fundamental fairness,' a requirement whose meaning can be as opaque as its importance is lofty. Applying the Due Process Clause is therefore an uncertain enterprise which must discover what 'fundamental fairness' consists of in a particular situation by first considering any relevant precedents and then by assessing the several interests that are at stake."

The Nebraska Supreme Court has articulated a three-part test for due process protecting liberty interests: (1) Is there a

protected liberty interest at stake? (2) If so, what procedural protections are required? (3) Given the facts of the case, was there a denial of the process that was due? *State v. Baker*, 245 Neb. 153, 511 N.W.2d 757 (1994); *In re Interest of R.G.*, 238 Neb. 405, 470 N.W.2d 780 (1991), *overruled on other grounds, O'Connor v. Kaufman*, 255 Neb. 120, 582 N.W.2d 350 (1998). See *Shearer v. Leuenberger*, 256 Neb. 566, 591 N.W.2d 762 (1999) (Connolly, J., concurring).

The parties agree that Mary has a protected liberty interest at stake. The parties also agree that the relevant procedural protections in this case are covered by § 43-279.01. That statutory section protects parents' liberty interests in raising their children by ensuring that a parent who is brought into court for a juvenile proceeding knows what is going on; knows all the possible outcomes of the case, including drastic measures such as termination of parental rights; and understands the rights that may be exercised during the case.

The parties further agree that the juvenile court in this case did not advise Mary in accordance with § 43-279.01 despite three hearings in the case. The State, however, argues that because Mary fought the charges against her while exercising the rights about which she was entitled to be advised, Mary was not deprived of due process.

It is true, as the State points out, that Mary's attorney vigorously tested the State's case, cross-examining witnesses and presenting Mary's own version of the facts. Clearly, Mary exercised many of the rights addressed in § 43-279.01, whether or not she was specifically aware of them.

However, the record does not show that Mary knew about all of her rights, such as the right to court-appointed counsel if she qualified economically. Nor does the record establish that she knew about the nature of the proceedings and the possible dispositions. This consideration—the possible disposition or outcome—is perhaps the most crucial. It is vital that a person in Mary's situation be told by the court that cases brought under § 43-247(3)(a) can, and sometimes do, end in drastic measures such as termination of parental rights. The fact that Mary had an attorney throughout the case does not change the importance or

the mandatory nature of the advisement by the court of rights as required in § 43-279.01.

The State's argument that Mary is responsible for the lack of advisement is not persuasive. There is no evidence that Mary's written denial, which requested a prompt trial, was anything other than a standard pleading. That is, there is no reason to believe that the filing of this pleading changed the normal course of the case in such a way that Mary could be held responsible for the failure by the trial court to give the statutory advisement. Further, the transcript from the hearing on temporary custody shows that the court's decision to "fast track" the case was based on the type or nature of the case, and not on any unusual request made by Mary.

## CONCLUSION

Mary has a crucial liberty interest at risk in this case: the right to custody of her child. The risks to that interest which accompany a filing under § 43-247(3)(a) are serious, and the advisement required by § 43-279.01 ensures that parents know those risks. While the State of Nebraska has the crucial interest of protecting children who are at risk, the law still requires that Mary be given the advisement under § 43-279.01 by the court. The trial court's failure deprived her of due process and requires that we reverse the decision of the separate juvenile court. The cause is remanded for a new trial after compliance with the mandate of § 43-279.01.

REVERSED AND REMANDED FOR A NEW TRIAL.