IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

IN RE INTEREST OF ISAIAH S. & GRACELYNN S.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE INTEREST OF ISAIAH S. AND GRACELYNN S.,
CHILDREN UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE,

V.

RUFUS M., APPELLANT.

Filed November 20, 2018.    Nos. A-18-227, A-18-228.

Appeals from the County Court for Dodge County: KENNETH J. VAMPOLA, Judge. Affirmed.

Richard Register, of Register Law Office, for appellant.

Brianna L. McLarty, Deputy Dodge County Attorney, for appellee.

PIRTLE, BISHOP, and ARTERBURN, Judges.

BISHOP, Judge.

## I. INTRODUCTION

Rufus M. appeals from separate orders of the county court for Dodge County, sitting as a juvenile court, terminating his parental rights to his son, Isaiah S. (case No. A-18-227) and his daughter, Gracelynn S. (case No. A-18-228). The underlying cases were heard jointly by the juvenile court, and the appeals have been consolidated for disposition. We affirm.

- 1 -

## II. BACKGROUND

Rufus and Tricha S. are the parents of Isaiah (born in 2009) and Gracelynn (born in 2012). Rufus and Tricha were divorced in 2013, and Tricha was awarded legal and physical custody of the children, subject to Rufus' supervised parenting time; no overnight parenting time was to occur until Rufus completed an anger management class and a parenting class. According to the February 2018 juvenile court orders terminating Rufus' parental rights: Isaiah and Gracelynn were removed from the family home and placed in foster care by the Nebraska Department of Health and Human Services (DHHS) in April 2016, and on May 4, Tricha entered a "no contest" plea to the State's juvenile petition(s) and the children were adjudicated to be within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Supp. 2015). During these juvenile court proceedings, the court was informed that Tricha intended to relinquish her parental rights to the children. Because Tricha is not part of this appeal, she will only be discussed as necessary.

On October 12, 2017, the State filed separate supplemental petitions for termination of Rufus' parental rights to Isaiah and Gracelynn. The State alleged that the children were found to be within the meaning of § 43-247(3)(a) in May 2016. The State further alleged that Rufus' parental rights to the children should be terminated pursuant to Neb. Rev. Stat. § 43-292(1) and (2) (Reissue 2016). According to the State, Rufus had abandoned Isaiah and Gracelynn for 6 months or more immediately prior to the filing of the petitions; Rufus substantially and continuously or repeatedly neglected and refused to give each child, or a sibling, necessary care and protection; and termination was in the children's best interests.

At a hearing on November 15, 2017, the juvenile court said, "This is scheduled for a first appearance termination of parental rights for the father, Rufus . . . who's not present." Rufus' counsel was present at the hearing. The State presented evidence of its "diligent efforts" to locate Rufus, and that the Sheriff of Pottawattamie County, Iowa (where Rufus purportedly lived) was unable to locate and serve him with summons. The State requested and received permission to serve Rufus by publication. The court set the termination of parental rights hearing for January 31, 2018.

The termination of parental rights hearing was held on January 31, 2018. Rufus was not present, but his counsel was present and asked for a continuance, which was denied by the juvenile court. Counsel also objected to service by publication, but the objection was overruled. The hearing proceeded and the State presented evidence as to why Rufus' parental rights to Isaiah and Gracelynn should be terminated. That evidence will be set forth later in our analysis.

In separate orders filed on February 16, 2018, the juvenile court terminated Rufus' parental rights to Isaiah and Gracelynn after finding that statutory grounds for termination existed pursuant to § 43-292(1) and (2), and that termination of parental rights was in the children's best interests.

Rufus appeals the juvenile court's orders.

## III. ASSIGNMENTS OF ERROR

Rufus assigns 10 errors to the juvenile court which we have consolidated and reordered as follows. He claims the juvenile court erred by (1) allowing the termination of parental rights hearing to proceed without proper service of process, (2) allowing the termination of parental rights hearing to proceed without advising Rufus of his rights and taking a plea, (3) denying Rufus'

motions to continue, (4) granting judicial notice of records, (5) finding statutory grounds existed to terminate his parental rights under § 43-292, and (6) finding termination of his parental rights was in the children's best interests.

## IV. STANDARD OF REVIEW

An appellate court reviews juvenile cases de novo on the record and reaches a conclusion independently of the juvenile court's findings. *In re Interest of Isabel P. et al.*, 293 Neb. 62, 875 N.W.2d 848 (2016).

## V. ANALYSIS

### 1. SERVICE OF SUMMONS AND NOTICE BY PUBLICATION

When the termination of parental rights is sought, the facts and alleged grounds for termination may be set forth in an original petition, a supplemental petition, or a motion filed with the court. See Neb. Rev. Stat. § 43-291 (Reissue 2016). Summons and notice, with a copy of the petition, supplemental petition, or motion attached, is to be given in the same manner as required in other cases before the juvenile court. See *id.* And, with an exception not relevant in this case, "notice, when required, shall be given in the manner provided for service of a summons in a civil action." Neb. Rev. Stat. § 43-268 (Reissue 2016).

The statues governing service of a summons in civil actions can be found in Chapter 25, Article 5 of the Nebraska statutes. As relevant here, the sheriff attempted to personally serve Rufus at what the State thought was Rufus' residence. See Neb. Rev. Stat. §§ 25-505.01 (service of summons; methods), 25-506.01 (process, by whom served), and 25-508.01 (service on individual) (Reissue 2016). When the sheriff was unable to locate Rufus at the address provided, the State sought and received permission from the juvenile court to provide service by publication. The court may allow service by publication upon motion and showing by affidavit that service cannot be made with reasonable diligence by any other method provided by statue. See Neb. Rev. Stat. § 25-517.02 (Reissue 2016). Service by publication is governed by Neb. Rev. Stat. §§ 25-518.01 through 25-525 (Reissue 2016).

Rufus argues that the service by publication in this case was flawed because (1) he could have been personally served, (2) the procedures for service by publication were not properly complied with, and (3) service by publication should not be constitutionally allowed in termination of parental rights cases. In response, the State asserts that it made diligent efforts to personally serve Rufus, but those efforts were unsuccessful, thus the court granted the State leave to attempt to perfect service by publication. We express no opinion as to whether the State made "diligent efforts" to personally serve Rufus. And the State concedes that it did not comply with the statutory requirements for service by publication. However, the State contends that Rufus' "objections to service were waived by voluntary appearance of [his] counsel." Brief for appellee at 10. As explained below, we agree that Rufus has waived any defects in service of process.

Neb. Rev. Stat. § 25-516.01 (Reissue 2016) states:

(1) The voluntary appearance of the party is equivalent to service.

(2) *A defense of* lack of jurisdiction over the person, *insufficiency of process, or insufficiency of service of process may be asserted only under the procedure provided in*

- 3 -

*the pleading rules adopted by the Supreme Court.* If any of those defenses are asserted either by motion or in a responsive pleading and the court overrules the defense, an objection that the court erred in its ruling will be waived and not preserved for appellate review if the party asserting the defense either (a) thereafter files a demand for affirmative relief by way of counterclaim, cross-claim, or third-party claim or (b) fails to dismiss a demand for such affirmative relief that was previously filed. *If any of those defenses are asserted either by motion or in a responsive pleading and the court overrules the defense, an objection that the court erred in its ruling on any issue,* except the objection that the party is not amenable to process issued by a court of this state, *will be waived and not preserved for appellate review if the party asserting the defense thereafter participates in proceedings on any issue other than those defenses*.

(Emphasis supplied.) Based on the statutory language above, the Nebraska Supreme Court has said that "a general appearance waives any defects in the process or notice, the steps preliminary to its issuance, or in the service or return thereof." *Burns v. Burns*, 293 Neb. 633, 640, 879 N.W.2d 375, 382 (2016). "It does not take much to make a general appearance." *Id*. at 642, 879 N.W.2d at 383. "For example, . . . a motion for a continuance constitutes a general appearance that confers jurisdiction over the moving party." *Id*.

In this case, Rufus' attorney did not object to service by publication at the November 2017 hearing. Then at the termination hearing in January 2018, counsel started by noting that his client, though aware of the proceedings, was not present in court, and counsel could only "assume" that "that there [was] some problem for him to attend"; counsel made a motion for a continuance "to allow [Rufus] to attend." After the motion to continue was denied, Rufus' counsel did raise issues of service to the juvenile court, but his objections were overruled. Counsel then proceeded to participate in the termination proceedings by cross-examining the State's witnesses. After the State finished presenting its evidence, Rufus' counsel once again asked for a continuance so that Rufus could appear and present evidence; that motion was overruled. Rufus' actions through his counsel constituted a general appearance and waived service of process. See *Burns v. Burns, supra* (wife's actions through her counsel constituted general appearance and waived service of process).

### 2. ADVISEMENT OF RIGHTS

Rufus claims the juvenile court "erred in proceeding to the termination of parental rights without rights advisement and taking of a plea." Brief for appellant at 8.

Neb. Rev. Stat. § 43-279.01 (Reissue 2016) states:

(1) When the petition alleges the juvenile to be within the provisions of subdivision (3)(a) of section 43-247 or when termination of parental rights is sought pursuant to subdivision (6) of section 43-247 and *the parent, custodian, or guardian appears with or without counsel, the court shall inform the parties* of the:

(a) Nature of the proceedings and the possible consequences or dispositions pursuant to sections 43-284, 43-285, and 43-288 to 43-295;

(b) Right of the parent to engage counsel of his or her choice at his or her own expense or to have counsel appointed if the parent is unable to afford to hire a lawyer;

(c) Right of a stepparent, custodian, or guardian to engage counsel of his or her choice and, if there are allegations against the stepparent, custodian, or guardian or when the petition is amended to include such allegations, to have counsel appointed if the stepparent, custodian, or guardian is unable to afford to hire a lawyer;

(d) Right to remain silent as to any matter of inquiry if the testimony sought to be elicited might tend to prove the party guilty of any crime;

(e) Right to confront and cross-examine witnesses;

(f) Right to testify and to compel other witnesses to attend and testify;

(g) Right to a speedy adjudication hearing; and

(h) Right to appeal and have a transcript or record of the proceedings for such purpose.

(Emphasis supplied.) Section 43-279.01 requires that the rights advisement be given at either the adjudication phase or the termination phase, but does not require that the advisement be given at both phases. *In re Interest of Aaliyah M. et al.*, 21 Neb. App. 63, 837 N.W.2d 98 (2013).

In his brief Rufus queries, "As the Court states in its order . . . that [Rufus] has NEVER attended any court appearances, when did he receive his rights advisement for either the original 3(a) case or the supplemental termination case?" Brief for appellant at 27. In its brief, the State does not address the rights advisement, or any lack thereof.

However, this court has previously determined that the parent must actually be present in court for § 43-279.01 to apply and the appearance by counsel alone does not trigger the statute. See *In re Interest of Maxwell T.*, 15 Neb. App. 47, 721 N.W.2d 676 (2006). As stated in that case:

This court has found that when a parent appears, with or without counsel, for an adjudication hearing and the parent is not informed of his or her rights pursuant to § 43-279.01, the resulting adjudication order must be reversed. See *In re Interest of Billie B.*, 8 Neb. App. 791, 601 N.W.2d 799 (1999). The instant case is distinguishable, however, because Lloyd [the father] was not present at the adjudication hearing. The question then becomes whether § 43-279.01 is applicable when a parent is not present at the relevant hearing. The parties cited no case law which addresses this issue, and we have found none.

Statutory interpretation presents a question of law. *McCray v. Nebraska State Patrol*, 271 Neb. 1, 710 N.W.2d 300 (2006). Statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous. *State v. Wester*, 269 Neb. 295, 691 N.W.2d 536 (2005). Section 43-279.01(1) provides that a juvenile court must inform a parent of the rights listed in the statute when the parent "appears with or without counsel." Our plain reading of the statute indicates that the language "with or without counsel" indicates that the parent must actually be present in court for the statute to apply and that appearance by counsel alone does not trigger the statute. *Lloyd was not present in court at the adjudication hearing. Therefore, § 43-279.01 is not applicable to the present situation and the juvenile court did not err in adjudicating Maxwell under the supplemental petition before Lloyd was provided a rights advisory pursuant to § 43-279.01.* We note that Lloyd has not assigned as error a denial of due process by the

failure to be informed of these rights, compare *In re Interest of Mainor T. & Estela T.*, 267 Neb. 232, 674 N.W.2d 442 (2004); nor has Lloyd assigned as error the denial of his motion to appear by telephone. Further, Lloyd's counsel did not move for a continuance at the adjudication hearing in order to secure Lloyd's presence. For all of these reasons, this assignment of error has no merit.

15 Neb. App. at 64, 721 N.W.2d at 690 (emphasis supplied).

Rufus was not present in court at the termination hearing. Therefore, § 43-279.01 is not applicable to the present situation and the juvenile court did not err in terminating Rufus' parental rights before he was provided a rights advisory pursuant to § 43-279.01. And since the court takes a plea only after giving the parties the information prescribed in § 43-279.01(1), which was not applicable in this case, it follows that the juvenile court did not err in proceeding to the termination of parental rights without the taking of a plea. See § 43-279.01(3) ("[a]*fter giving the parties the information prescribed in subsection (1) of this section*, the court may accept an in-court admission, an answer of no contest, or a denial from any parent, custodian, or guardian as to all or any part of the allegations in the petition"). (Emphasis supplied.)

We note that Rufus did raise issues of due process regarding his lack of service, but he did not assert as error a denial of his due process by the failure to be informed of his § 43-279.01 rights. However, unlike in *In re Interest of Maxwell T., supra*, Rufus' counsel did ask for a continuance at the termination hearing in order to allow Rufus to appear and present evidence, so we address that next.

### 3. MOTION TO CONTINUE

At the beginning of the termination hearing and again when the State finished presenting its evidence, Rufus' counsel requested a continuance so that Rufus could appear and present evidence; both requests for continuance were denied. Rufus argues the juvenile court erred by failing to grant him a continuance so that he could appear at trial, and that the denial of a continuance deprived him of his due process rights. An appellate court reviews a judge's ruling on a motion to continue for an abuse of discretion. *Moreno v. City of Gering*, 293 Neb. 320, 878 N.W.2d 529 (2016).

At the termination hearing, Rufus' counsel addressed the juvenile court by stating:

[T]he Court should be informed that I had direct contact with [Rufus] by going to Iowa and also speaking with him multiple times. He indicated that he was aware of the date and time. I clearly indicated to him that if he did not appear, the Court may proceed with termination trial today, and if he did appear that we would be asking for a continuance. I can only assume, since he said he was not -- he said he was planning on attending and was enthusiastic during that conversation that there is some problem for him to attend. He did express transportation concerns. We informed him that his attorney's office does not provide transportation to trial. But based on his desire to attend the trial, I would ask the Court for a continuance at this time to allow him to attend.

The State objected to a continuance stating, "[Rufus] has failed to appear numerous times before this Court. We took all efforts in availing and contacting by sheriff service and publication." The children's guardian ad litem objected to a continuance as well. The court denied the motion to continue. After the State finished presenting its evidence, the court asked Rufus' counsel if he had any evidence. Counsel responded, "I again ask for a continuance so my client can appear and present evidence"; the motion was "overruled and denied."

As indicated above, and as pointed out in the State's brief, Rufus was aware of the date and time of the termination proceedings and was informed by his counsel that if he did not appear the court may proceed to trial. And while transportation concerns were apparently discussed by Rufus and his counsel prior to the scheduled termination hearing, no motion to continue was made until the hearing began and witnesses were present and ready to testify. The State argues that a motion to continue "would have been timely prior to trial, when [counsel] was made aware of his client's desire to attend, his transportations issues, and the status of his theory of defense[,]" but "[n]ot at the eleventh hour when his client failed to show up after being aware of the date and time of the trial." Brief for appellee at 7. We agree. Based on the record before us, we cannot say the district court abused its discretion when it denied Rufus' motion to continue.

4. TERMINATION OF PARENTAL RIGHTS

(a) Testimony From Termination Hearing

Heather Schultze is a child and family support specialist with DHHS. Schultze testified that when she was assigned to this case on June 2, 2017, Rufus was not involved in the children's lives. To her knowledge, Rufus did not contact DHHS after the children's removal and he did not maintain any contact with DHHS following removal.

Exhibit 27, which was received into evidence without objection, is a letter from DHHS to the juvenile court dated September 27, 2017, purporting to outline "all documented contacts and attempts" to contact Rufus. We will set forth the pertinent information from that letter. On April 7, 2016, Rufus called "the hotline" to inquire about his children who had been removed; one notation for April 8 states that Rufus reported he was homeless and would call back the next week when he had a residence. Next, in June, a letter was sent to Rufus at his last known location, but it was returned with the label "returned to sender, Attempted-not known and Unable to forward." In July or August, DHHS reached out to Rufus' counsel in an effort to find updated contact information; no updated contact information was received. Letters were sent to Rufus (at his last known address) in each month from July through December; there was either no response or the letter was returned to DHHS. In January 2017, DHHS called the last known telephone number for Rufus; there was no answer and the caseworker left a message asking Rufus to contact her. The caseworker was able to make telephone contact with Rufus in February, and informed him about an upcoming family team meeting; the worker also asked Rufus if he would like to discuss visits but he said he would have to call back and "disconnected the phone call." In March, April, May, and June, the caseworker called and left messages for Rufus, but he did not return the calls. In June, the caseworker spoke to Rufus' attorney who said that "he had not been able to contact Rufus in 'well over a month.'" Also in June, DHHS attempted to mail a case plan court report to Rufus at his last known address, but it was returned to the office.

Schultze testified that she attempted to contact Rufus in June 2017, and made contact on June 27 when he returned her telephone call; during that call, Rufus gave her his apartment address in Council Bluffs, Iowa. Schultze asked Rufus about visitation at that time, and Rufus stated he would call her back the following day at noon, but he never returned her call. (According to exhibit 27, on June 27, Rufus demanded to know where his children were and with whom; he also asked how the children were. The caseworker asked Rufus if this was the best number to contact him at and he replied "yeah." When the worker asked for a current address, Rufus stated that he had to go and hung up the phone. He called back later that day and did give a current address when asked; he said he had lived there for 3 years "'and really isn't that hard to find.'" He said he would call back at noon the next day.) Schultze said she continued to call Rufus and left voicemails telling him that she would like him to call her back in order to discuss his children and possible visitation (although exhibit 27 shows the next documented contact or attempted contact was on July 24). According to Schultze, Rufus returned her telephone call in July and demanded that Schultze bring the children to the YMCA in Council Bluffs for visitation. Schultze responded that they were able to do a supervised visitation in Fremont, Nebraska. In response, Rufus informed Schultze that he did not have time for that, and hung up the phone. (According to exhibit 27, during that call on July 24, Rufus stated, "Fuck you, ain't nobody got time for that shit. Don't call back"; then he hung up the phone. Exhibit 27 also indicates that DHHS called and left voicemails for Rufus on three occasions in August, but that he did not call back.) Schultze testified that Rufus next contacted her on January 24, 2018; she gave him his new caseworker's information and asked for his new number, which he gave to her. To Schultze's knowledge, Rufus contacted his new caseworker and requested visitation with the children at that time.

Schultze testified that during her involvement in this case, Rufus did not provide Isaiah or Gracelynn with parental care. Schultze had the previous worker's case notes. Based on those notes and her own time on the case, Schultze stated that Rufus did not provide any food, shelter, financial or emotional support to the children in the 6 months between April and October 2017 (when the supplemental petitions were filed). During that 6 months prior to the petitions being filed, Schultze made attempts to contact Rufus to talk about employment and housing; Rufus refused to provide information to DHHS to confirm employment, and he refused to let her do a walk-through of his home. After the supplemental petitions were filed, Rufus began having his wages garnished, and thus child support was paid beginning in November 2017. Schultze believed that termination of Rufus' parental rights was in the children's best interests.

Christina Boydston was appointed as the children's guardian ad litem "at the onset of this case" in April 2016. She had not spoken to Rufus in the last 6 months and had not been to his home. In her opinion, termination of Rufus' parental rights was in the children's best interests.

(b) Statutory Grounds for Termination

In Nebraska statutes, the bases for termination of parental rights are codified in § 43-292. Section 43-292 provides 11 separate conditions, any one of which can serve as the basis for the termination of parental rights when coupled with evidence that termination is in the best interests of the child. *In re Interest of Elizabeth S.*, 282 Neb. 1015, 809 N.W.2d 495 (2012).

In its orders terminating Rufus' parental rights to Isaiah and Gracelynn, the juvenile court found that statutory grounds existed pursuant to § 43-292(1) (abandonment) and § 43-292(2) (substantial and continuous or repeated neglect).

Pursuant to § 43-292(1), the court may terminate parental rights when the parent has abandoned the juvenile for 6 months or more immediately prior to the filing of the petition. Here, the supplemental petitions were filed on October 12, 2017, so we look to the 6 month period between April 12 and October 12. For purposes of § 43-292(1), "abandonment" is a parent's intentionally withholding from a child, without just cause or excuse, the parent's presence, care, love, protection, maintenance, and the opportunity for the display of parental affection for the child. *In re Interest of Justine J. & Sylissa J.*, 288 Neb. 607, 849 N.W.2d 509 (2014).

The record before us reveals that Rufus did not maintain contact with DHHS after his children were removed in April 2016; it appears that he never had any visits with his children after their removal. Between April and October 2017 (the 6-month period relevant for abandonment), Rufus did not provide any food, shelter, financial or emotional support to the children. During a June telephone call, Rufus asked Schultze how his children were doing; but when she asked Rufus about visits he said he would call back the following day at noon, but he did not call back. During a July telephone call, he did "demand" visitation with the children in Iowa, but when Schultze offered a supervised visit in Fremont, Rufus stated, "Fuck you, ain't nobody got time for that shit. Don't call back"; then he hung up the phone. The next time Rufus apparently asked for visits was in late January 2018, shortly before the termination hearing. Based on this record, we find clear and convincing evidence that Rufus intended to abandon his children. Any efforts Rufus did make regarding his parental obligations were "token efforts" at best. See *In re Interest of Isabel P. et al.*, 293 Neb. 62, 80, 875 N.W.2d 848, 861 (2016) ("[a]bandonment is not an ambulatory thing the legal effects of which a parent may dissipate at will by token efforts at reclaiming a discarded child. Parental obligation requires a continuing interest in the child and a genuine effort to maintain communication and association with that child"). We conclude by clear and convincing evidence that Rufus abandoned Isaiah and Gracelynn within the meaning of § 43-292(1).

Even if we had found that Rufus' actions, or lack thereof, did not constitute abandonment, they most certainly would have constituted neglect under § 43-292(2). See *In re Interest of Sir Messiah T. et al.*, 279 Neb. 900, 782 N.W.2d 320 (2010) (§ 43-292 generally provides for termination of parental rights when parent has neglected and refused to give necessary care to juvenile or sibling of juvenile). See, also, *In re Interest of Joseph S. et al.,* 291 Neb. 953, 870 N.W.2d 141 (2015) (one need not have physical possession of child to demonstrate existence of neglect contemplated by § 43-292(2)).

Our de novo review of the record clearly and convincingly shows that grounds for termination of Rufus' parental rights under § 43-292(1) and/or (2) were proven by sufficient evidence. The next inquiry is whether termination of Rufus' parental rights was in the children's best interests.

(c) Best Interests

Under § 43-292, once the State shows that statutory grounds for termination of parental rights exist, the State must then show that termination is in the best interests of the child. *In re*

*Interest of Ryder J.*, 283 Neb. 318, 809 N.W.2d 255 (2012). But that is not all. A parent's right to raise his or her child is constitutionally protected; so before a court may terminate parental rights, the State must also show that the parent is unfit. *In re Interest of Nicole M.*, 287 Neb. 685, 844 N.W.2d 65 (2014).

There is a rebuttable presumption that the best interests of a child are served by having a relationship with his or her parent. *Id.* Based on the idea that fit parents act in the best interests of their children, this presumption is overcome only when the State has proved that a parent is unfit. *Id.* The term "unfitness" is not expressly used in § 43-292, but the concept is generally encompassed by the fault and neglect subsections of that statute, and also through a determination of the children's best interests. *In re Interest of Nicole M., supra.* Parental unfitness means a personal deficiency or incapacity which has prevented, or will probably prevent, performance of a reasonable parental obligation in child rearing and which caused, or probably will result in, detriment to a child's wellbeing. *Id.* The best interests analysis and the parental fitness analysis are fact-intensive inquiries. *Id.* And while both are separate inquiries, each examines essentially the same underlying facts as the other. *Id.*

As stated previously, it appears that Rufus has not seen his children since their removal in April 2016. He made little effort to keep in contact with DHHS and made no genuine efforts to see or support his children, whether that support be physical, emotional, or financial. And we note that Rufus did not appear at the termination hearing despite being informed by his counsel that if he did not appear the court may proceed with the termination trial. Both Schultze and the children's guardian ad litem testified that termination of Rufus' parental rights was in the children's best interests. "Children cannot, and should not, be suspended in foster care or be made to await uncertain parental maturity." *In re Interest of Walter W.*, 274 Neb. 859, 872, 744 N.W.2d 55, 65 (2008). Based on our de novo review of the record, we find that the State has rebutted the presumption of parental fitness as to Rufus. We further find that there is clear and convincing evidence that it is in the children's best interests to terminate Rufus' parental rights.

### 5. TAKING OF JUDICIAL NOTICE

In our de novo review, we relied solely on witness testimony and exhibits 18 through 27 (those exhibits were received into evidence without objection) to determine that Rufus' parental rights should be terminated. Therefore, we need not address Rufus' assignment of error related to judicial notice. An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it. *In re Interest of Carmelo G.*, 296 Neb. 805, 896 N.W.2d 902 (2017).

### VI. CONCLUSION

For the reasons stated above, we affirm the orders of the juvenile court terminating Rufus' parental rights to Isaiah and Gracelynn.

AFFIRMED.