IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

IN RE INTEREST OF FAITH S.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE INTEREST OF FAITH S., A CHILD UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE,

V.

MARTHA C., APPELLANT.

Filed March 19, 2024.    No. A-23-624.

Appeal from the Separate Juvenile Court of Douglas County: AMY N. SCHUCHMAN, Judge. Affirmed.

Jessica L. Gilgor, of Battle Born Law, L.L.C., for appellant.

David M. Ceraso, Deputy Douglas County Attorney, for appellee.

PIRTLE, Chief Judge, and RIEDMANN and WELCH, Judges.

WELCH, Judge.

## INTRODUCTION

Martha C. appeals from the order of the Douglas County Separate Juvenile Court terminating her parental rights to Faith S. She contends that (1) the juvenile court erred in finding that termination was in Faith's best interests and (2) she received ineffective assistance of counsel during the termination proceedings. For the reasons stated herein, we affirm.

## STATEMENT OF FACTS

Martha is the biological mother of Faith who was born in November 2017. In October 2018, Faith was removed from Martha's care due to reports of substance use, domestic violence, mental health concerns, and unexplained injuries. Faith was placed with her paternal grandmother and has not been returned to Martha's care during the pendency of these proceedings.

- 1 -

In March 2019, the juvenile court adjudicated Faith as a minor child within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2016) based upon Martha's admissions that Faith lacked proper care due to Martha's use of controlled substances and/or alcohol, which impaired Martha's ability to properly parent, and that Martha had failed to provide safe, stable, and/or appropriate housing for Faith. The juvenile court also found that returning Faith to Martha's home would be contrary to Faith's health and safety and that it was in Faith's best interests to remain in the temporary custody of the Nebraska Department of Health and Human Services (DHHS).

On December 8, 2022, the State filed a motion to terminate Martha's parental rights pursuant to Neb. Rev. Stat. § 43-292(2) (Reissue 2016) (substantial and continuous or repeated neglect and refusal to give necessary parental care or protection); § 43-292(6) (reasonable efforts to preserve and reunify have failed to correct the conditions leading to the determination under § 43-247(3)(a)); and § 43-292(7) (out-of-home placement for 15 or more months of most recent 22 months) and that termination of Martha's parental rights was in Faith's best interests.

During a pretrial hearing on May 18, 2023, which was 1 day before the termination hearing was scheduled to commence, Martha's counsel requested that the court accept Martha's admission to certain allegations in the motion to terminate parental rights but requested that the court's ruling on the admission be held in abeyance so that Martha could execute a relinquishment of her parental rights. The following colloquy took place between the juvenile court and Martha:

> THE COURT: Well, ma' am, you are about to enter into a plea, the effect of which would terminate your parental rights. If you feel you need additional time to speak with [your counsel] that is fine. We have this matter scheduled for tomorrow, and we can come back tomorrow. Do you feel that you need additional time to speak with [counsel]?
>
> [Martha]: No. I do feel it's in [Faith's] best interest to have Grandma be her sole physical, primary provider.
>
> . . . .
>
> [Martha]: And to live with her. . .
>
> . . . .
>
> [Martha]: But I'm admitting guilt or yeah. Termination of rights. I didn't want to do termination. I just wanted to, on my own - -
>
> . . . .
>
> [Martha]: - - relinquish my parental rights. I don't want to take a chance to lose them at all.

Before revisiting the issue of the legal effect of an admission to the allegations in the motion to terminate, the court expressed that it would withhold issuing any findings on the admission, which the court referred to as a "plea," because Martha's counsel had requested the court delay entering a termination order to allow Martha the opportunity to complete paperwork to relinquish her parental rights. As it related to that request, Martha and the court engaged in the following colloquy:

> THE COURT: All right. And as I said before, the Court is going to withhold issuing any findings on this plea for about 45 days to allow you time to relinquish your parental rights if that is what you choose to do. Do you understand that?
>
> [Martha]: Yes.

THE COURT: All right. And do you understand that . . . the Court cannot force you to relinquish. That . . . is something that you are going to have to decide on your own. Do you understand that?

[Martha]: Oh, yes, Your Honor.

THE COURT: All right. Do you understand also that . . . if we go forward with the plea and [the State] provides evidence to support [the counts to which you are entering admissions] and 45 days elapses and there is no relinquishment, that the Court would issue - -

[Martha]: Right.

THE COURT: - - findings and orders consistent with the evidence that [the State] provides?

[Martha]: Correct.

THE COURT: Do you understand that?

[Martha]: Yes.

THE COURT: And do you understand that the counts that you are pleading to, that those would, in effect, terminate your parental rights, ma' am?

[Martha]: Yes.

The court further asked Martha if she understood that pleading to the counts in the motion to terminate parental rights would result in a permanent removal of Faith from her custody and that she would lose her legal right to visit with Faith. Martha responded that she understood but asked the court about whether there was some arrangement where she would "still have [her] rights but not custody of [Faith]," similar to an arrangement with one of her other children. Thereafter, the court asked if Martha understood that the effect of relinquishing her rights would mean that she would lose her parental rights. Martha stated, "Yeah. I guess I'm just a touch confused." The court then recessed for 10 minutes so Martha's counsel could explain the effect of relinquishment to Martha.

Following the brief recess, the juvenile court asked Martha additional questions including whether Martha understood that a plea and relinquishment would be a termination of her parental rights; whether she understood that an order terminating her parental rights would result in the permanent removal of Faith from Martha's custody; whether she understood she would lose her legal right to visits with Faith; whether she understood Faith would be placed with DHHS for the purpose of adoption; and whether she understood that termination of parental rights would result in Martha losing all of her rights, privileges, and obligations as Faith's parent. Martha responded in the affirmative as to each question.

After accepting Martha's plea to allegations, inter alia, that Faith was a child within the meaning of § 43-292(7) because she had been in out-of-home placement for 15 or more months of the most recent 22 months and that termination of Martha's parental rights was in Faith's best interests, as well as the State's factual basis, which included court reports and case plans from 2019 through 2023 and the pleadings in the case and all court findings and orders during the pendency of the case, the court scheduled a relinquishment check hearing in July 2023.

At the July 2023 relinquishment check hearing, Martha's counsel was present but Martha failed to appear. The juvenile court denied counsel's request for a continuance after counsel

- 3 -

indicated that Martha did not complete the relinquishment documents. Martha's counsel further stated that Martha expressed she no longer wanted counsel to represent her and, since that time, had not had any further contact with counsel. The juvenile court found that Martha was aware of the deadline to relinquish her parental rights but had failed to do so, that termination of Martha's parental rights was supported by Martha's admission that Faith had been in out-of-home placement for 15 or more months out of the most recent 22 months, and that termination of Martha's parental rights was in Faith's best interests. Martha has timely appealed to this court.

## ASSIGNMENTS OF ERROR

Martha assigns that (1) the juvenile court erred in finding that termination was in Faith's best interests and (2) Martha received ineffective assistance of counsel during the termination proceedings.

## STANDARD OF REVIEW

An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings. *In re Interest of Jessalina M.*, 315 Neb. 535, 997 N.W.2d 778 (2023). When an appeal calls for statutory interpretation or presents questions of law, an appellate court must reach an independent, correct conclusion irrespective of the determination made by the court below. *Id*.

The determination of whether the procedures afforded an individual comport with constitutional requirements for procedural due process presents a question of law. *In re Interest of Joseph S. et al.*, 288 Neb. 463, 849 N.W.2d 468 (2014). In reviewing questions of law, an appellate court in termination of parental rights proceedings reaches a conclusion independent of the lower court's ruling. *Id*.

## ANALYSIS

### TERMINATION OF PARENTAL RIGHTS

Before reaching Martha's assigned errors, we briefly summarize the standard for termination of parental rights.

The grounds for terminating parental rights are codified in § 43-292. *In re Interest of Denzel D.*, 314 Neb. 631, 992 N.W.2d 471 (2023). Any of the 11 separate subsections of § 43-292 can serve as a basis for termination when coupled with evidence that termination is in the best interests of the child. *Id*. The State has the burden to show by clear and convincing evidence both that one of the statutory bases enumerated in § 43-292 exists and that termination is in the child's best interests. *Id*.

In addition to proving a statutory ground, the State must show that termination of parental rights is in the best interests of the children. See, § 43-292; *In re Interest of Jahon S.*, 291 Neb. 97, 864 N.W.2d 228 (2015). A parent's right to raise his or her child is constitutionally protected; so before a court may terminate parental rights, the State must show that the parent is unfit. *Id*. There is a rebuttable presumption that the best interests of a child are served by having a relationship with his or her parent. See *id*. This presumption is overcome only when the State has proved that the parent is unfit. *Id*. Parental unfitness means a personal deficiency or incapacity which has

- 4 -

prevented, or will probably prevent, performance of a reasonable parental obligation in child rearing and which caused, or probably will result in, detriment to the child's well-being. *Id*.

However, in a termination proceeding, a court may accept an in-court admission from a parent as to all or part of the allegations in the petition pursuant to Neb. Rev. Stat. § 43-279.01(3) (Reissue 2016). *In re Interest of Donald B. & Devin B.*, 304 Neb. 239, 933 N.W.2d 864 (2019); *In re Interest of Brooklyn T. & Charlotte T.*, 26 Neb. App. 669, 922 N.W.2d 240 (2018). Section 43-279.01(3) (Reissue 2016) provides that

> After giving the parties the information prescribed in subsection (1) of this section, the court may accept an in-court admission, an answer of no contest, or a denial from any parent, custodian, or guardian as to all or any part of the allegations in the petition. The court shall ascertain a factual basis for an admission or an answer of no contest.

In the instant case, the day before the termination hearing was scheduled to begin, Martha's counsel notified the court that Martha wanted to admit to certain allegations in the termination petition, but counsel requested that the court allow Martha time to sign relinquishment documents before the termination order was entered. The court explained to Martha that admitting the allegations in the motion to terminate her parental rights would result in an order terminating her parental rights even if Martha failed to complete relinquishment documents. The court then accepted Martha's admissions to the motion to terminate her parental rights and accepted a factual basis to support Martha's admission. However, the court scheduled a check hearing approximately 45 days later to provide Martha the opportunity to relinquish her parental rights. After Martha failed to complete the relinquishment documents and failed to appear for the scheduled check hearing, the juvenile court entered an order terminating Martha's parental rights in accordance with the court's prior admonishments to Martha.

When a parent admits to the State's allegations regarding the statutory ground for termination of parental rights and that termination is in the children's best interests, the State does not have to prove those allegations by clear and convincing evidence. *In re Interest of Donald B. & Devin B., supra.* Rather, the court should ascertain a factual basis for an admission. *In re Interest of Brooklyn T. & Charlotte T.*, 26 Neb. App. 669, 922 N.W.2d 240 (2018). However, § 43-279.01(3) does not specify precisely what the factual basis must entail. *Id*.

Martha contends that the juvenile court erred in finding that termination of her parental rights was in Faith's best interests because Martha was confused that her admissions would result in a complete severance of her parental rights. We read Martha's assigned error to contend that because her admission was not knowing and voluntary, the juvenile court procedurally could not proceed to terminate her parental rights on a "factual basis" inquiry because a termination must be supported by a trial and its findings supported by clear and convincing evidence.

As it relates to Martha's allegation that her admission was not knowing and voluntary, we find that the record refutes that claim. We acknowledge the unusual posture of the case, in that Martha wanted to admit to certain allegations in the motion to terminate her parental rights instead of proceeding to trial, but that she wanted 45 days to relinquish her parental rights. As the Nebraska Supreme Court noted in *In re Interest of Donald B. & Devin B.*, 304 Neb. 239, 251, 933 N.W.2d 864, 873 (2019):

- 5 -

Under the adoption statutes, a voluntary relinquishment is effective when a parent executes a written instrument and DHHS or an agency, in writing, accepts responsibility for the child. Under the Nebraska Juvenile Code, termination of parental rights is determined by judicial action. Although the practical result may be similar, the mechanisms and effects of those procedures are different and should be treated so.

Here, the record is unclear regarding why Martha wanted the opportunity to pursue a relinquishment procedure instead of the juvenile court entering a termination order based upon her admissions. Nevertheless, pursuant to § 43-279.01(3), the court was allowed to accept the in-court admission, subject then to ascertaining a factual basis to support that admission. Based upon her request, Martha was provided 45 days to separately seek relinquishment subject to the admonition that failure to complete relinquishment would result in the entry of the termination order based on Martha's admissions. When Martha failed to pursue the relinquishment procedures, the court entered the order on the strength of her admissions and the factual basis provided by the State, which Martha now claims do not support a best interest finding.

Although we acknowledge that on the record Martha exhibited some confusion over the impact that an admission would have on her rights, she was provided a break to consult with her counsel. After the hearing resumed, the court thoroughly questioned Martha regarding the nature of what her admissions would mean and whether she wanted to move forward with the admission or proceed to trial. Martha chose to admit to certain allegations and the matter proceeded to a factual basis inquiry as required by statute. On this record, we reject Martha's challenge that the admissions were not knowing and voluntary, and we find that the court properly proceeded with a factual basis review. And then, although not required to, the court provided Martha with an additional 45 days prior to entering the order to pursue relinquishment of her parental rights. Martha failed to pursue a relinquishment, and then failed to appear at the check hearing scheduled prior to the entering of the termination order. We find Martha's assignment that she did not knowingly and voluntarily admit to the allegations in the petition lacks merit.

That said, because we have found that Martha's admissions were valid and the court was required to proceed to determine whether the admissions were supported by a proper factual basis, we proceed to determine whether the factual basis supported Martha's admissions as it relates to both statutory and best interest requirements to terminate her parental rights.

STATUTORY GROUNDS FOR TERMINATION

Martha does not assign as error the factual basis for the statutory grounds upon which termination was based, but because our review is de novo, we have reviewed the factual basis supporting termination under § 43-292(7) and find it sufficient.

As relevant to this appeal, section 43-292(7) allows for termination when "[t]he juvenile has been in an out-of-home placement for fifteen or more months of the most recent twenty-two months" from the date of the motion to terminate parental rights. *In re Interest of Jessalina M.*, 315 Neb. 535, 997 N.W.2d 778 (2023).

In the State's factual basis, it offered multiple court reports and case plans, a copy of the pleadings, and court findings and orders documenting the case progression. The State's factual basis provided that Faith was initially removed from Martha's care in October 2018 and since that

time, Faith has not been returned to Martha's care. The State filed the motion to terminate Martha's parental rights on December 8, 2022. The record undisputably shows that Faith has been in out-of-home placement for 15 or more months of the most recent 22 months. We find that, because the factual basis provided by the State supports Martha's admission related to termination of her parental rights pursuant to § 43-292(7), the juvenile court properly terminated Martha's parental rights pursuant to subsection (7).

BEST INTERESTS

As this court recently stated in *In re Interest of Cameron L. & David L.*, 32 Neb. App. 578, 606-07, ___ N.W.3d ___, ___ (2024):

In addition to proving a statutory ground, the State must show that termination of parental rights is in the best interests of the children. See, § 43-292; *In re Interest of Jahon S.*, 291 Neb. 97, 864 N.W.2d 228 (2015). A parent's right to raise his or her child is constitutionally protected; so before a court may terminate parental rights, the State must show that the parent is unfit. *In re Interest of Jahon S., supra*. There is a rebuttable presumption that the best interests of a child are served by having a relationship with his or her parent. See *id.* This presumption is overcome only when the State has proved that the parent is unfit. *Id.* Parental unfitness means a personal deficiency or incapacity which has prevented, or will probably prevent, performance of a reasonable parental obligation in child rearing and which caused, or probably will result in, detriment to the child's well-being. *Id.*

The best interests analysis and the parental fitness analysis are fact-intensive inquiries. And while both are separate inquiries, each examines essentially the same underlying facts as the other. *Id.* In proceedings to terminate parental rights, the law does not require perfection of a parent; instead, courts should look for the parent's continued improvement in parenting skills and a beneficial relationship between parent and child. *In re Interest of Becka P. et al.*, [27 Neb. App. 489, 933 N.W.2d 873 (2019)]. In cases where termination of parental rights is based on § 43-292(7), appellate courts must be particularly diligent in their de novo review of whether termination of parental rights is in fact in the child's best interests. *In re Interest of Becka P. et al., supra*.

Here, the State's evidence provided that Faith had initially been removed from Martha due to concerns of her methamphetamine use, domestic violence, unexplained injuries to Faith, mental health, and because a hair follicle test of Faith's hair tested positive for methamphetamine. The court reports and case plans showed that Faith, who was 5 years old at the time of the termination, had resided with her grandmother since she was approximately 8 months old. Throughout the case, the caseworker noted that Faith's grandmother was willing and able to provide Faith a permanent home through adoption and was able to meet all of Faith's needs. Faith was consistently seeing a therapist and was diagnosed with attachment disorder in March 2022.

Throughout the pendency of the case, according to the State's offered court reports and case plans, Martha was inconsistent with visits; she had been unsuccessfully discharged from drug testing at least six times; she had used methamphetamine and alcohol; she had failed to complete substance abuse treatment, to attend therapy, to participate in medication management, to complete

an updated co-occurring evaluation, and to sign releases of information; she had failed to abide by the no-contact order, which prohibited contact with Faith's biological father; and she had failed to remain in contact with case professionals. Each court report entered into evidence between 2019 and 2023 showed that Martha was making poor progress at reunifying with Faith. As of October 2021, the juvenile court ordered that no more reasonable efforts were required on behalf of DHHS as it related to Martha. Additionally, although initially the visitation worker noted that Martha and Faith had a strong bond, Martha's inconsistencies in participating in visitation caused Faith to become detached as noted by the visitation reports. The visitation worker also noted that Faith began to indicate that she did not want to go on visits with Martha and, during one visit in January 2023, the visitation worker reported that Faith was clingy with the worker and did not want to be around Martha.

Based on our de novo review, the State's factual basis indicated that Martha had not demonstrated a willingness or ability to provide care or support for Faith. Martha has an extensive history with DHHS, having relinquished her parental rights to two of her other children and having another child placed with the child's biological father before the case closed. Despite DHHS offering numerous services to help Martha reunify with Faith, Martha failed to engage in services or address the concerns that led to Faith's removal.

Based on the factual basis provided, the record does not indicate any likelihood that Martha's behaviors will change in the foreseeable future. Nebraska courts have recognized that children cannot, and should not, be suspended in foster care or be made to await uncertain parental maturity. *In re Interest of Brooklyn T. & Charlotte T.*, 26 Neb. App. 669, 922 N.W.2d 240 (2018). Where a parent is unable or unwilling to rehabilitate himself or herself within a reasonable time, the best interests of the child require termination of the parental rights. *Id*. Accordingly, we find there was an adequate factual basis to support Martha's admission that terminating her parental rights was in Faith's best interests.

INEFFECTIVE ASSISTANCE OF COUNSEL

Martha next contends that her counsel was ineffective during the termination proceedings because the record shows that Martha "was struggling with exactly what admission to a Motion to Terminate Parental rights meant." Brief for appellant at 17. She further asserts "[t]here is only six (6) minutes where in [her] counsel . . . allegedly discusse[d] with her the effects of what [was] actually occurring during the hearing" and that, even after that conversation, she was still confused about the nature of the proceedings. *Id*. She argues that she did not understand that by admitting to the allegations in the motion to terminate her parental rights that her parental rights to Faith would be permanently severed.

Juvenile proceedings are civil rather than criminal in nature; an individual has no constitutional right to effective assistance of counsel in a civil proceeding, and a statutory right to the appointment of counsel does not give rise to an ineffective assistance of counsel claim in a civil case; however, due process is required in cases involving termination of parental rights. *In re Interest of Joshua R. et al.*, 265 Neb. 374, 657 N.W.2d 209 (2003). The fundamental fairness concept of the Due Process Clause of the 14th Amendment informs our assessment of the protections which are appropriate in juvenile matters. *In re Interest of Heather R. et al.*, 269 Neb. 653, 694 N.W.2d 659 (2005). Thus, although there is not an ineffective assistance of counsel claim

in this juvenile case, we consider whether Martha's right to due process was violated during the termination proceedings.

In *In re Interest of Joshua R. et al.*, 265 Neb. at 382, 657 N.W.2d at 215, the Nebraska Supreme Court stated:

> We have recently addressed a parent's due process rights during termination proceedings. In *In re Interest of Ty M. & Devon M.*, *ante* p. 150, 158, 265 Neb. 150, 655 N.W.2d 672, 681 (2003), we stated: "'State intervention to terminate the parent-child relationship must be accomplished by procedures meeting the requisites of the Due Process Clause.'" (Quoting with approval *Carlotta P. v. State (In re Kantril P.)*, 257 Neb. 450, 598 N.W.2d 729 (1999)). We also recognized: "'Procedural due process includes notice to the person whose right is affected by the proceeding; reasonable opportunity to refute or defend against the charge or accusation; reasonable opportunity to confront and cross-examine adverse witnesses and present evidence on the charge or accusation; representation by counsel, when such representation is required by the Constitution or statutes; and a hearing before an impartial decisionmaker.'"

Further, in *In the Interest of Aaliyah M. et al.*, 21 Neb. App. 63, 68, 837 N.W.2d 98, 102 (2013), this court stated:

> Parents have a recognized liberty interest in raising their children. *In re Interest of Billie B.*, 8 Neb. App. 791, 601 N.W.2d 799 (1999). The parent-child relationship is afforded due process protection. *Id*. The appellate courts apply a three-part test for due process protecting liberty interests: (1) Is there a protected liberty interest at stake? (2) If so, what procedural protections are required? (3) Given the facts of the case, was there a denial of the process that was due? *Id*.
>
> This court has stated that § 43-279.01 "protects parents' liberty interests in raising their children by ensuring that a parent who is brought into court for a juvenile proceeding knows what is going on; knows all the possible outcomes of the case, including drastic measures such as termination of parental rights; and understands the rights that may be exercised during the case."

There is no question that parents have a fundamental protected liberty interest in caring for their children. See *In re Interest of A.A. et al.*, 307 Neb. 817, 951 N.W.2d 144 (2020). Therefore, in light of the procedural due process requirements laid out above, we consider whether Martha was denied due process.

There is no dispute that Martha received notice of the State's motion to terminate her parental rights and that she was represented by counsel throughout the juvenile case and during the termination proceedings. Although Martha had the opportunity to refute the allegations set forth in the motion to terminate her parental rights and could have cross-examined the witnesses against her in a termination hearing, she waived those rights by admitting to the allegations in the motion to termination her parental rights. Instead, Martha's argument relates to the requirements under § 43-279.01, as she alleges she did not have an understanding of the proceedings, know the possible outcomes of her admission, or understand the rights she could exercise during the proceedings. We disagree.

Although Martha initially appeared to be confused regarding the effect of a relinquishment of her parental rights, the juvenile court recessed the proceedings so that Martha and her counsel could discuss the ramifications of a relinquishment of her parental rights. After Martha's counsel had the opportunity to explain the effect of a relinquishment of parental rights, the court proceeding resumed. The juvenile court asked Martha, inter alia, whether she understood "that admitting to the motion [to terminate her parental rights], if the Court makes findings, and also relinquishing your parental rights would be a termination of your parental rights. Do you understand that?" Martha responded saying, "Oh, yes." The court also advised Martha that, if after 45 days she had still not relinquished her parental rights, the court would enter findings and orders consistent with Martha's admissions to the motion to terminate her parental rights which Martha indicated she understood. When Martha had not relinquished her parental rights at the end of the 45 day period, failed to appear at the check status hearing, and had not been in contact with counsel after indicating she no longer wanted counsel to represent her, the juvenile court entered an order terminating Martha's parental rights to Faith. Based on our de novo review of the record, we find that Martha understood the nature of the proceedings and the effect of her admission to the State's motion to terminate her parental rights. We further find that Martha knew the effect of the relinquishment of her parental rights and that, if she failed to relinquish her parental rights within 45 days, the court would terminate her parental rights based upon her admissions to the motion to terminate parental rights. Because Martha failed to sign the documents to relinquish her parental rights, failed to attend the check status hearing, and failed to request additional time to accomplish the relinquishment of her parental rights, we find that she was not denied due process.

CONCLUSION

Having considered and rejected Martha's assigned errors, we affirm the order terminating her parental rights to Faith.

AFFIRMED.